**STATE**

v.

**Stephen EISEMAN.**

**No. 81–502–C.A.**

Supreme Court of Rhode Island.

June 10, 1983.

Dennis J. Roberts, II, Atty. Gen., Marc DeSisto, Sp. Asst. Atty. Gen., for plaintiff.

Matthew J. Faerber, Newport, Brian J. McMenimen, Boston, Mass., for defendant.

OPINION

WEISBERGER, Justice.

This is an appeal from a judgment of conviction in the Superior Court for possession of cocaine with intent to deliver. On appeal, the defendant contends that the trial justice erred in denying a motion to suppress evidence that the defendant claims was seized in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Further, the defendant alleges that his conviction was based upon insufficient evidence. As will become evident, our determination of these contentions makes a remand of the case necessary. The pertinent facts are as follows.

On September 9, 1980, a woman who identified herself as Michelle Robinson (Robinson) presented a heavily taped package to an employee of the Federal Express Company (Federal Express) at Boeing Field in Seattle, Washington. Stating that the package contained a watch, Robinson requested that Federal Express ship the package to "Paul Lennon, Racquet Road, Jamestown, Rhode Island." Robinson informed the Federal Express employee that the addressee would pick up the package at the airport office of Federal Express in Rhode Island. She then paid the shipping fee and left the office even though the Federal Express employee had told her that she would have to wait for change. Because Robinson behaved nervously, the employee became suspicious. She therefore contacted her supervisor, Roger Finley (Finley). He opened the package and found a small watch box. A small plastic bag that contained a white powdery substance was inside the box. Finley then telephoned Agent Keith Earnst (Earnst) of the Drug Enforcement Administration (DEA) in Seattle. Earnst instructed another DEA agent to investigate. The agent went to the Federal Express office and conducted a field test on the substance. The results of that test indicated that the bag contained cocaine. The agent reported this discovery to Earnst, who in turn contacted Agent Richard Scov-

el (Scovel) of the DEA in Providence. Earnst then requested that Federal Express rewrap the package and send it to Rhode Island.

Agent Scovel informed Senior Narcotics Inspector Domenic F. Capalbo, Jr. (Capalbo), of the Division of Drug Control in Providence of the discovery of the cocaine and the impending arrival of the package at the Federal Express office. Capalbo obtained a search warrant for the package and, accompanied by Scovel and another state narcotics inspector, began surveillance at the office. The package arrived in Rhode Island on the morning of September 10. Sometime that afternoon defendant arrived to claim it. As he was leaving Federal Express with the package, the officers approached defendant and notified him that they had a search warrant for the package. They then opened the package, discovered the cocaine, and arrested defendant.

A criminal information charged defendant, *inter alia*, with possession of cocaine with intent to deliver in violation of G.L. 1956 § 21–28–4.01, as enacted by P.L.1974, ch. 183, § 2. The defendant waived his right to a jury trial. Prior to trial, defendant filed a motion to suppress from introduction into evidence the cocaine that had been seized at the Federal Express office in Rhode Island. The defendant based this motion on the following arguments. First, defendant claimed that because the affidavit that served as the basis for the search warrant was facially deficient, no probable cause existed to justify the warrant's issuance. Second, defendant contended that the field test that the DEA agent in Seattle conducted on the cocaine constituted a significant expansion of the private search that concededly did not implicate defendant's Fourth Amendment rights. The defendant argued, therefore, that the test conducted without a warrant was an unlawful search proscribed by the Fourth and Fourteenth Amendments to the United States Constitution.

The trial justice, however, disagreed. He ruled (1) that the affidavit sufficiently set forth facts and circumstances to establish probable cause for the issuance of a search warrant and (2) that the field test was justified by exigent circumstances. Accordingly, the trial justice denied defendant's motion to suppress. After trial, he found defendant guilty of possession of cocaine with intent to deliver.

On appeal, defendant claims that the trial justice erred in denying his motion to suppress. The defendant reasserts his challenge to the sufficiency of the affidavit and to the validity of the field test. Further, defendant contends that his conviction was based upon insufficient evidence. Specifically, he argues that he possessed an amount of cocaine that was wholly consistent with possession for personal use and that the state introduced no additional evidence to support a finding of intent to deliver. Accordingly, he urges this court to reverse his conviction. Before we address this contention, we must review the propriety of the trial justice's denial of the motion to suppress.

I

*Sufficiency of the Affidavit*

■ The defendant argues that the affidavit that was the basis for issuance of the search warrant failed to set forth sufficient underlying facts and circumstances to establish probable cause. The affiant stated in part:

"On 9 Sept 80, at 10:00 P.M. Special Agent Richard Scovel of the Drug Enforcement Administration office in Providence, R.I. received information from Special Agent Keith Arnst [sic] of the Federal Drug Enforcement Administration in Seattle, Washington that an envelope being sent via Federal Express from Seattle to Warwick, R.I. contained a quantity of powder which a field test concluded that the material is Cocaine. The Agent in Seattle stated that the envelope was sent by a subject named Michele [sic] Robinson of 10670 Exeter, N.E. Seattle, Washington 98125 on 9–9–80 ad-

dressed to Paul Lennon Racquet Rd. Jamestown, R.I. 02832 * * *."

In support of this contention, defendant points out that the affidavit failed to state the following: (1) whether Agent Earnst personally observed the package or its contents, and if not, who did; (2) who tested the powder and how that person gained access to the powder; (3) what type of test was conducted or how reliable that test was; (4) whether or not there was an informant; and (5) when the information was obtained. In addition, defendant claims that the affidavit fails to establish the source of the factual assertion that the substance in the envelope was cocaine.

In *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965), the Supreme Court of the United States postulated that "affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." The defendant argues, however, that the underlying facts and circumstances set forth in the affidavit do not establish probable cause as required by the Court in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We disagree. In *Aguilar* the affidavit stated:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of law." *Id.* at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725.

Clearly, the affidavit in this case, when read in a common sense fashion, sets forth facts and circumstances that far exceed the mere conclusion set forth in the *Aguilar* affidavit. Moreover, we are mindful of the *Ventresca* Court's admonition that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca,* 380 U.S. at 108, 85 S.Ct. at 746, 13 L.Ed.2d at 689; *see State*

*v. Read,* R.I., 416 A.2d 684, 689–90 (1980); *State v. Joseph,* 114 R.I. 596, 598, 337 A.2d 523, 525 (1975).

■ Similarly, we reject defendant's contention that the affidavit was "sourceless." Admittedly, the affidavit did not identify the DEA agent in Seattle who conducted the field test. Only an "unduly technical and restrictive reading" of the affidavit, however, could compel us to conclude that anyone other than an agent of the DEA conducted the field test that resulted in the conclusion that the substance was cocaine. *See Ventresca,* 380 U.S. at 111, 85 S.Ct. at 747, 13 L.Ed.2d at 691.

Moreover, the two cases upon which defendant relies are distinguishable. In *United States v. Goldstein,* 321 F.Supp. 959 (D.Mass.1971), a handwritten statement at the end of the affidavit stated that a particular parcel had been brought to a specific location. The statement, however, lacked any indication of the source of this information. Acknowledging the applicability of the *Ventresca* Court's rationale, the federal district court found nonetheless that this deficiency rendered the affidavit fatally defective. *Goldstein,* 321 F.Supp. at 960. In this case, on the other hand, the affidavit specifically identifies the DEA agent who informed the affiant that the package was being shipped from Washington to Rhode Island.

Additionally, we are not persuaded by the holding of the Federal District Court for the District of Massachusetts in *United States v. Curwood,* 338 F.Supp. 1104 (D.Mass.1972). In *Curwood* the court held that the affiant's phrase "I have determined," which preceded his description of the location of the suspected contraband, was insufficient because it was ambiguous and failed to disclose the source of the information. *Id.* at 1119. Unlike the affiant in *Curwood,* the affiant in this case never asserted that he had personally inspected the package or its contents. Rather, he named DEA Agent Scovel as his source of information. Accordingly, we find that the affidavit was not "sourceless."

Consequently, we hold that the trial judge properly denied defendant's motion to suppress based upon the challenge to the sufficiency of the affidavit.

## II

### The Field Test

■ The employees of Federal Express did not implicate the Fourth Amendment when they opened the package and inspected its contents because the constitutional prohibition of unreasonable searches and seizures applies only to governmental conduct. *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048, 1051 (1921). Relying on *Walter v. United States,* 447 U.S. 649, 657, 100 S.Ct. 2395, 2402, 65 L.Ed.2d 410, 418 (1980), however, defendant contends that the DEA agent's field test of the powdery substance in the package was such a "significant expansion" of the private search that it constituted a separate governmental search. He argues, therefore, that the agent should have obtained a warrant before conducting the field test.

In *Walter,* cartons containing pornographic film were mistakenly delivered to a company whose name was similar to that of the addressee. Suggestive drawings and explicit descriptions of the contents were located on the exterior of the cartons. A company employee opened several cartons and unsuccessfully attempted to determine the contents of the enclosed film by holding it up to the light. The employee then contacted agents of the Federal Bureau of Investigation who seized the cartons and, without a warrant, viewed the films by means of a projector.

Subsequently, several individuals were convicted on obscenity charges relating to the interstate shipment of the films. The defendants appealed the denial of their motion to suppress, but the federal court of appeals upheld the convictions. On certiorari to the United States Supreme Court, the defendants argued that the Fourth Amendment required the agents to obtain a warrant before they screened the films.

The Court, in a plurality opinion, determined that "the unauthorized exhibition of the films constituted an unreasonable invasion of their owner's protected interest in privacy. It was a search; there was no warrant; the owner had not consented; and there were no exigent circumstances." *Id.* at 654, 100 S.Ct. at 2400, 65 L.Ed.2d at 416. Finding that the FBI agents lawfully possessed the cartons of films, the Court noted that "an officer's authority to possess a package is distinct from his authority to examine its contents." *Id.* The Court, therefore, found that the agents could seize the cartons and examine their contents to the extent that the private party had previously done. The projection of the films, however, was a "significant expansion" of the private search. *Id.* at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418. It was a separate governmental search that "was not supported by any exigency, or by a warrant even though one could have easily been obtained." *Id.* Accordingly, the Court sustained the defendants' objection to admission of the evidence.

■ The defendant analogizes the DEA agent's field test of the cocaine to the projection of the film in *Walter.* He asserts, therefore, that a warrant was required. Before we address this argument, however, we must determine whether *Walter* applies to this case.

In *Walter,* the Court found that the established requirement that government agents obtain warrants prior to opening sealed packages in the mail is "especially important" when the packages contain "books or other materials arguably protected by the First Amendment, and when the basis for the seizure is disapproval of the message contained therein * * *." *Walter,* 447 U.S. at 655, 100 S.Ct. at 2401, 65 L.Ed.2d at 417. Citing *United States v. Barry,* 673 F.2d 912 (6th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982) and *People v. Adler,* 50 N.Y.2d 730, 409 N.E.2d 888, 431 N.Y.S.2d 412, *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980), the state asserts

that the *Walter* Court's rationale concerning significant governmental expansions of private searches is limited to searches that implicate First Amendment rights. In *Adler* an airline employee in Los Angeles became suspicious of an individual who had delivered a package for shipment to New York. The employee X-rayed the package, opened it, and discovered a large quantity of pills. He then contacted a DEA agent who took the package and subjected the pills to laboratory analysis. After discovering that the pills were amphetamines and barbiturates, the agent inscribed his initials on the package and returned it to the airline for shipment to New York. Police officers in New York seized the package, analyzed its contents, and instructed airline employees to inform anyone who inquired about the package that it had been temporarily lost in shipment. Subsequently, the defendant claimed the package and was immediately arrested. *People v. Adler,* 50 N.Y.2d at 734–35, 409 N.E.2d at 890, 431 N.Y.S.2d at 414.

At trial, the defendant successfully challenged the validity of the search conducted by the New York police officer. The appellate division, however, reversed this ruling because the court found that the actions of the police in New York were merely a continuation of the lawful search and seizure in Los Angeles. *Id.* at 735–36, 409 N.E.2d at 890, 431 N.Y.S.2d at 414.

On appeal, the New York Court of Appeals determined that when "[c]onsidered as a search discrete from that in Los Angeles, the New York police action was violative of the Fourth Amendment proscription against warrantless searches." *Id.* at 736, 409 N.E.2d at 890, 431 N.Y.S.2d at 414. The *Adler* court, however, found that the contraband had been discovered in the course of the airline employee's inspection of the package and its contents in Los Angeles. Furthermore, the court determined that "[t]he police did not go beyond the private search when they examined the contents of the package." *Id.* at 737, 409 N.E.2d at 891, 431 N.Y.S.2d at 416.

Reasoning that the nature of the drugs "was reasonably self-evident," the New York court distinguished the film projection in *Walter* from the laboratory analysis of the pills in *Adler. Id.* at 737–38 n. 4, 409 N.E.2d at 891 n. 4, 431 N.Y.S.2d at 416 n. 4. Noting that the search in *Walter* affected First Amendment rights, the court refused to impose a warrant requirement for laboratory analysis on legally seized drugs. We are not persuaded by defendant's suggestion that the New York Court of Appeals interpreted *Walter* as applying only to searches that involve First Amendment considerations. Rather, we believe that the *Adler* court emphasized the factual distinctions between the searches in both cases. The court might have deemed the limitations of *Walter* more applicable if it had found that the criminal nature of the capsules was *not* "reasonably self-evident." Instead, the court determined that the capsules obviously were contraband and that the defendant had no reasonable expectation of privacy in the contents of the capsules. *Adler,* 50 N.Y.2d at 737–38 n. 4, 409 N.E.2d at 891 n. 4, 431 N.Y.S.2d at 416 n. 4. We refuse, at this juncture, to comment on the propriety of this holding. Rather, we analyze it only to indicate that the New York court would not have addressed the issue concerning the degree of intrusion into privacy interests if the court had interpreted *Walter* as utterly inapposite to the facts in *Adler.*

Similarly, we are not persuaded by the interpretation of *Walter* set forth by the United States Court of Appeals for the Sixth Circuit in *United States v. Barry, supra.* Finding that "*Walter turned on the fact* that the material seized was protected by the First Amendment," (emphasis added), the court held that chemical analysis of pills did not intrude upon protected privacy interests to the extent that the viewing of films did in *Walter. United States v. Barry,* 673 F.2d at 920. Again, we note that the Sixth Circuit court need not have addressed the degree of intrusion into protected privacy interests if the First Amendment

aspect was the sole determinative fact in *Walter.* Moreover, the *Barry* court, like the *Adler* court, neglected to recognize that in *Walter* Justice Stewart mentioned the First Amendment implications of the search only when emphasizing that "an officer's authority to possess a package is distinct from his authority to examine its contents." *Walter,* 447 U.S. at 654, 100 S.Ct. at 2400, 65 L.Ed.2d at 416; *see* 2 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.5 at 86 (1983 Supp.). Indeed, Justice Stewart cited *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), in support of this proposition. These cases involved warrantless searches that in no way implicated First Amendment rights. Furthermore, defendant correctly points out that Justice Stevens analogized the opening of a closed container to expose boxes of film to the opening of a locked suitcase to expose a gun case. *See Walter,* 447 U.S. at 658 n. 12, 100 S.Ct. at 2402 n. 12, 65 L.Ed.2d at 419 n. 12. These factors militate against an interpretation of *Walter* that limits the application of the Court's rationale to cases in which Fourth and First Amendment rights are intertwined. We agree with the assertion that "*Walter* rested on the [F]ourth [A]mendment, not the [F]irst [A]mendment." *United States v. Jacobsen,* 683 F.2d 296, 300 n. 4 (8th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). Accordingly, we hold that the "significant expansion" rationale of *Walter* applies in this case.[1]

Our review of the trial justice's determination of defendant's motion to suppress, however, leads us to conclude that he failed to apply the precepts of *Walter* to the DEA agent's field test of the cocaine. At the hearing on the motion to suppress, defendant analogized the field test to the conduct of the FBI agents in *Walter.* The trial justice posited that

> "[t]he question apparently is whether or not exigent circumstances existed for the government to search and conduct a field test, and I have to assume and infer * * * that certainly the government took from the envelope certain substances to make the examination or field test. *So there was no intrusion. The question is whether or not exigent circumstances existed.*" (Emphasis added.)

The trial justice further characterized the issue before him as a question of whether or not the DEA had sufficient opportunity to obtain a warrant "to search" the package between the time that the Federal Express employee opened the package and the time that the DEA agent conducted a field test on its contents. Denying the motion to suppress, the trial justice found that

> "exigent circumstances did permit, in this case, the *initial intrusion into the envelope, and the initial examination of the substance contained therein.* * * * [T]he warrantless search was made with sufficient probable cause, and exigent circumstances did exist to permit the police to make such a *search and examination* without the benefit of a Court authorized warrant." (Emphasis added.)

---

1. Until *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), it was not generally recognized that scientific tests upon clothing, firearms, or narcotic substances that had been properly seized required separate warrant authorization. It is probably as a result of this prior consensus that the courts in *United States v. Barry,* 673 F.2d 912 (6th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982), and in *People v. Adler,* 50 N.Y.2d 730, 409 N.E.2d 888, 431 N.Y. S.2d 412, *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980), exhibited substantial reluctance to apply the warrant requirement to field tests. It must be noted, however, that the Supreme Court of the United States made significant changes in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), articulating for the first time a clear distinction between searches and seizures. Indeed, not long before determination of those cases, the Court had seemed to state in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), that there was no constitutional distinction between the seizure of an automobile and the search thereof. Concededly, however, repositories of personal effects were given special treatment from and after the determination in *Chadwick.*

Our review of the trial justice's prefatory statements and his ruling on the motion to suppress compels us to conclude that he misapprehended the principles of *Walter*. Rather than address defendant's contention that the field test constituted a "significant expansion" of the private search, the trial justice characterized the various steps in the investigative process as "intrusions," "examinations," and "searches." We cannot ascertain, therefore, whether or not the trial justice found that the field test was an independent governmental search prohibited by the Fourth Amendment. Indeed, he correctly determined that the private search was not constitutionally proscribed. Yet he subsequently applied an exigent-circumstances rationale to validate the actions of both the Federal Express employees and the government agent. Moreover, the state needed to invoke one of the recognized exceptions to the warrant requirement to justify the field test only if the trial justice first determined that the test was a "significant expansion" of the private search.

We find that the trial justice's ruling concerning defendant's Fourth Amendment challenge to the field test is inadequately definitive for our review. Accordingly, we must remand the case and instruct the trial justice to address the question of whether the DEA agent's field test was a "significant expansion" of the lawful private search. In determining whether the field test constituted a significant expansion of the private search, the trial justice should consider several factors: (1) the experience and expertise, if any, of the agent who first viewed the contents of the plastic bag after the private search; (2) the question of whether in light of the agent's expertise he formed an opinion with a reasonable degree of certainty concerning the nature of the substance without a field test; (3) the extent of the intrusion required in order to perform the field test; and (4) the question of whether such intrusion impinged upon any further expectation of privacy that remained after the exposure of the contents by private persons. Having considered these factors in the context of evidence

already presented in the case and such further evidence as the court may deem relevant and necessary, the court may determine whether the agent's application of a field test to the discovered substance was a significant expansion of the private search.

If the trial justice finds that the field test was a significant expansion of the private search and thus was subject to Fourth Amendment requirements, he should then determine whether this further search was valid under one of the recognized exceptions to the warrant requirement. The trial justice applied the exigent-circumstances exception to the field test. On appeal, the state reasserts this justification and further contends that the plain-view doctrine validates the field test if the test constitutes a Fourth Amendment search. Because we seek to guide the parties and the trial justice, we must address the applicability of both exceptions to the facts before us.

### A. Exigent Circumstances

■ The trial justice determined that exigent circumstances justified the warrantless field test

"because of the nature of the substance, because of the mobility of the envelope * * *, and because it would certainly be likely [that] the person to whom the envelope had been sent might become suspicious if in fact the envelope did not arrive on time * * *."

The defendant contends that no exigent circumstances existed; there was no possibility that the evidence would be destroyed or disappear, the substance did not appear to be dangerous, and there was no factual support for the notion that the addressee would have fled if the delivery of the package had been delayed. Moreover, defendant asserts that the exigencies cited by the state could not justify a warrantless search in this case because the package and its contents were under the exclusive control of the government at the time of the field test. We agree.

The exigent-circumstances exception to the warrant requirement, as it relates to warrantless searches of personal effects such as luggage and parcels in the mail, is controlled by principles that the Supreme Court enunciated in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In *Chadwick* the Court held that once government officials exercise exclusive control over containers, luggage or repositories of personal effects, they must obtain warrants to conduct searches. *Chadwick,* 433 U.S. at 15, 97 S.Ct. at 2485, 53 L.Ed.2d at 551. The Court reaffirmed this principle in *Sanders* by applying it to the warrantless search of a suitcase that was properly seized from an automobile. *See Sanders,* 442 U.S. at 763–64, 99 S.Ct. at 2593, 61 L.Ed.2d at 244–45. Clearly, the Court will uphold such a search if the possibility exists that the item to be searched poses an imminent danger to the police or to the public. *Chadwick,* 433 U.S. at 15 n. 9, 97 S.Ct. at 2485 n. 9, 53 L.Ed.2d at 551 n. 9. Such an exigency did not exist in this case.

Without question, when the DEA agent conducted the field test, he had obtained exclusive control over the contents of the package. *See Chadwick,* 433 U.S. at 13, 97 S.Ct. at 2484, 53 L.Ed.2d at 549.[2] The trial justice found that the exigencies of mobility and the possibility of flight justified the warrantless test. The state argues that this ruling was not clearly wrong. Contending that we should accept the possibility-of-flight rationale, the state claims that

the delayed arrival of the package in Rhode Island would have alerted defendant that police had discovered the presence of contraband. The state's reliance on *United States v. Ford,* 525 F.2d 1308 (10th Cir. 1975), however, is misplaced. As Professor LaFave has pointed out, *Ford* was a pre-*Chadwick* case in which the Tenth Circuit Court applied the principles of *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *See* 2 LaFave, § 5.5 at 368–69 (1978). *Chambers,* however, is an "automobile exception" case. This exception to the warrant requirement emanated from the opinion of the Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and was most recently explicated in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The bases for the exception are the inherent mobility of the automobile and the diminished expectation of privacy that individuals have in their automobiles. In *Chadwick* and *Sanders,* however, the Court refused to apply the principles of the automobile-exception cases to warrantless searches of personal effects, such as the contents of the package in this case. *See Sanders,* 442 U.S. at 763–65, 99 S.Ct. at 2593–94, 61 L.Ed.2d at 244–46; *Chadwick,* 433 U.S. at 12, 97 S.Ct. at 2484, 53 L.Ed.2d at 548–49; *see also Ross,* 456 U.S. at 809–811, 102 S.Ct. at 2165, 72 L.Ed.2d at 584 (*Chadwick* Court "squarely rejected" extension of automobile-exception rationale to movable containers). *Chadwick* and *Sanders,* therefore, prohibit the state from utilizing the possibility of flight or the inherent mobility of a

---

**2.** Moreover, the fact that the DEA agent planned to return the package to Federal Express for delivery to Rhode Island does not affect this determination. "[T]he exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control." *Arkansas v. Sanders,* 442 U.S. at 763, 99 S.Ct. at 2593, 61 L.Ed.2d at 244–45. There is no evidence in the case concerning the time required to have obtained a warrant in Seattle and the impact of such time upon delivery of the package by Federal Express. Exigency cannot be determined in a vacuum or by mere assertion. Fur-

thermore, the DEA agents in Seattle and the state narcotics officers in Rhode Island acted in concert. One noted commentator has aptly described such conduct as a "controlled delivery." 2 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.5 at 87 (1983 Supp.). During a "controlled delivery," police custody of the package begins at the point of the shipment's origin, continues during shipment of the package, and includes surveillance of the package once it arrives at its intended destination where the addressee picks it up. *See generally id.* at § 5.5 at 87–90 (discussing steps of "controlled delivery" procedure and seminal cases).

parcel in the mail after that mobility has been interdicted by seizure as exigencies to justify the warrantless field test in this case.

Indeed, a case that the state relies upon to assert that *Walter* is inapplicable here supports this very proposition. Although the New York court in *People v. Adler* determined that the challenged governmental conduct was coextensive with the private search, the court first addressed the propriety of the government's conduct when viewed as an independent search. The court rejected the state's assertion of the possibility of flight as an exigent circumstance to justify the warrantless search. Further, the court held that

> "[h]owever, assuming that the seizure of the package could be justified by some exigency existing in New York, the warrantless search of the package following the seizure was improper. At that point, no demanding circumstances existed to justify an immediate search, for the property there was within the control of the police." *Adler,* 50 N.Y.2d at 736, 409 N.E.2d at 890, 431 N.Y.S.2d at 415.

The *Adler* court therefore recognized that "an officer's authority to possess a package is distinct from his authority to examine its contents." *Walter,* 447 U.S. at 654, 100 S.Ct. at 2400, 65 L.Ed.2d at 416. Assuming that the field test was a significant expansion of the private search, absent exigent circumstances, a warrant was required in order to authorize such further interferences with the right to privacy guaranteed by the Fourth Amendment. *See, e.g., Chadwick,* 433 U.S. at 14–16, 97 S.Ct. at 2485–86, 53 L.Ed.2d at 550–51; *United States v. Painter,* 480 F.Supp. 282, 284–85 (W.D.Mo. 1979); *State v. Randall,* 116 Ariz. 371, 372–73, 569 P.2d 313, 315–16 (Ct.App.1977). *See generally* 1 Ringel, *Searches & Seizures, Arrests and Confessions* § 10.3 at 10–6 and 10–6.1 (1982) (discussing necessity for warrant prior to search of personal luggage, boxes, and closed containers under police

custody). We are of the opinion that if the trial justice determines on remand that the field test was a significant expansion of a private search, he should direct the state to address whether exigent circumstances, as delineated by the Supreme Court in *Chadwick* and *Sanders,* justified the absence of a warrant.

### B. *Plain View*

■ As an alternative to exigent circumstances, the state sets forth the plain-view doctrine to validate the warrantless field test. We reject this contention for the following reasons: (1) the discovery of the suspected cocaine was not inadvertent; (2) the plain-view doctrine justifies warrantless *seizures* of evidence; and (3) even if the plain-view doctrine validated the warrantless seizure of the suspected cocaine, a warrant was required for police to exceed the scope of the private search.

■ The Supreme Court explained the rationale for the plain-view doctrine in *Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564, 581–87 (1971). This court has interpreted *Coolidge* as allowing a police officer to seize evidence that is in plain view when (1) the officer was lawfully in the position that allowed him to see the evidence, (2) the officer discovered the evidence inadvertently, and (3) it was immediately apparent to the officer that the object was evidence of criminality. *See, e.g., State v. Robalewski,* R.I., 418 A.2d 817, 824 (1980); *State v. Marshall,* 120 R.I. 306, 310, 387 A.2d 1046, 1048 (1978); *State v. Carillo,* 113 R.I. 32, 36, 317 A.2d 449, 452 (1974); *accord United States v. Roberts,* 644 F.2d 683, 686 (8th Cir.1980), *cert. denied,* 454 U.S. 973, 102 S.Ct. 523, 70 L.Ed.2d 392 (1981); *United States v. Block,* 522 F.Supp. 451, 455 (D.Mass.1981). The DEA agent who went to the Federal Express office in Seattle certainly was lawfully on the premises. Concerning the "immediately apparent" requirement of the doctrine,[3] however, de-

---

3. It is interesting to note that during the current term a plurality of the Supreme Court in

*Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) was somewhat critical of

fendant contends that no evidence was introduced concerning the officer's immediate awareness of the white powder's incriminatory nature. The state counters that this requirement does not require absolute certainty and that, in any event, the agent's act of conducting a field test on the powder creates an inference that he was aware of the substance's incriminating nature. We need not address this issue because the fatal defect to the applicability of the plain-view doctrine in this case arises from the "inadvertence" requirement of the doctrine.

The DEA agent who conducted the field test certainly did not inadvertently discover what he perceived to be contraband. The Federal Express employees, having previously discovered the white powder, expressly directed the agent to its location. He then examined it and conducted the field test. Admittedly, there has been controversy among state and federal courts concerning whether inadvertence is a necessary prerequisite for the operation of the plain-view doctrine. *See Texas v. Brown,* —— U.S. ——, ——, 103 S.Ct. 1535, 1544, 75 L.Ed.2d 502 (1983) (White, J. concurring); 2 LaFave, § 6.7 at 488–91; 1 Ringel, § 6.5 at 6–22 to 6–25. *Compare North v. Superior Court,* 8 Cal.3d 301, 307–08, 502 P.2d 1305, 1308–09, 104 Cal.Rptr. 833, 836–37 (1972) *and State v. Pontier,* 95 Idaho 707, 712, 518 P.2d 969, 974 (1974) (inadvertence not a requirement) *with United States v. Berenguer,* 562 F.2d 206, 210 (2d Cir.1977) *and State v. Robalewski,* 418 A.2d at 824 (discovery must be inadvertent). As we have stated, we subscribe to the position that a plain-view discovery of incriminating evidence must be made inadvertently. Until the United States Supreme Court, by a majority of its members, modifies the teachings of *Coolidge,* we perceive no reason for us to depart from the inadvertence requirement of the plain-view doctrine.

Even if we were persuaded that such a course was justified, the doctrine would be inapplicable in the case for another, equally compelling reason. The plain-view doctrine validates the warrantless *seizure* of evidence. *See Coolidge,* 403 U.S. at 464–66, 91 S.Ct. at 2037–38, 29 L.Ed.2d at 581–83. If the police *search* the seized item without a warrant, they must set forth further justification. In this case, defendant challenges the field test as an unlawful, warrantless Fourth Amendment search. The defendant does not claim that the DEA agent would have been acting unlawfully had he merely seized the package.

Relying on the Sixth Circuit court's opinion in *United States v. Rodriguez,* 596 F.2d 169 (6th Cir.1979), the state, asserts, however, that the plain-view doctrine justified the field test of the white powder. In *Rodriguez,* the defendant claimed that the warrantless seizure of the package containing the suspected contraband was unconstitutional and that the field test was an independent search that was not justified by any exception to the warrant requirement. The court found that "[a]n object in plain view may be inspected and *seized* without a warrant if" certain requirements are met. Furthermore, the court determined that police officers do not need a warrant to seize the package " 'if the incriminating nature of the object is immediately apparent' from plain view observation." *Id.* at 175. Consequently, the *Rodriguez* court held that "the seizure of the package by the police was permissible under the 'plain view' exception to the warrant requirement." *Id.* at 172. This language illustrates that it is unclear whether or not the Sixth Circuit court squarely addressed the validity of the field test. The court seemingly limited its inquiry to the constitutionality of only the seizure. We therefore find the court's rationale inconclusive.

Moreover, *Rodriguez* was decided prior to the opinion of the Supreme Court in *Walter.* Finding that the government's con-

---

the immediate apparency requirement suggested in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), by another plurality of the Court. Consequently, it may be perplexing to lower federal courts and to state courts in their attempt to determine what the state of the law is on this subject.

duct significantly expanded the private search, Justice Stevens first addressed the effect of the plain-view doctrine. He wrote:

"Even though some circumstances—for example, if the results of the private search are in plain view when materials are turned over to the Government—may justify the Government's reexamination of the materials, surely the Government may not exceed the scope of the private search unless it has the right to make an independent search." *Walter v. United States,* 447 U.S. at 657, 100 S.Ct. at 2402, 65 L.Ed.2d at 418.[4]

In the case before us, the DEA agent could properly reexamine the contents of the package to the extent that they were exposed by the search previously conducted by the Federal Express employees. He could not, however, significantly expand the scope of the private search unless he obtained a warrant. Accordingly, we hold that the state cannot set forth the plain-view doctrine to justify conduct that may constitute a "significant expansion" of the private search.

## III

### Sufficiency of the Evidence

The final contention of defendant is that the evidence at trial was insufficient to support a judgment of conviction for possession of cocaine with intent to deliver. He asserts that the amount of cocaine that he possessed was wholly consistent with possession for personal use and that the state presented no other evidence to establish the requisite intent to deliver.

■ It is undisputed that at the time of his arrest, defendant possessed 34.5 grams of cocaine with a purity of 75 percent. The "street value" of the cocaine was $4,140.

The trial justice based his finding of guilt upon these factors, "the nature of the transaction, the manner in which [the package] was shipped, [and] the manner in which it was picked up * * *." A trial justice's decision in a nonjury civil or criminal trial is entitled to great weight; it will not be disturbed on appeal unless the record indicates that the trial justice misconceived or overlooked material evidence, or was otherwise clearly wrong. *State v. Welch,* R.I., 441 A.2d 539, 541 (1982); *In re Susan,* R.I., 411 A.2d 296, 299 (1980).

The only evidence that the state introduced concerning defendant's intent to deliver the cocaine was the amount (34.5 grams). Testimony established that the street value of the cocaine, if it was sold at 75 percent purity, would be $4,140. If, on the other hand, the cocaine was diluted to 15 to 20 percent purity, its street value would increase to over $14,000. The state asserted that the trial justice could reasonably infer that defendant would "cut" the cocaine so that he could increase his profit. DEA Agent Scovel, however, testified that defendant possessed none of the chemical substances used to dilute high-purity cocaine, no scales, and no packaging materials. Moreover, Scovel testified that cocaine could be ingested in purities of up to 100 percent and that he had no way of knowing to what use defendant was going to put the cocaine. The state introduced no evidence concerning normal amounts of cocaine that one individual could reasonably consume or concerning any previous drug-dealing activities on the part of defendant.

The trial justice declined to infer that defendant was going to dilute the cocaine. He found, nevertheless, that possession of 34.5 grams of 75 percent pure cocaine, with a street value of over $4,000, was sufficient

4. In *Walter,* Justice White wrote a separate opinion in which Justice Brennan joined. He disagreed with Justice Steven's suggestion that the FBI might have been able to view the films without a warrant if the private party had previously viewed them. *Walter,* 447 U.S. at 660, 100 S.Ct. at 2403, 65 L.Ed.2d at 420 (White, J. concurring); *see id.* at 657 n. 9, 100 S.Ct. at 2402 n. 9, 65 L.Ed.2d at 418 n. 9 (Stevens, J). Justice White, however, agreed with Justice Stevens that the FBI agents' reexamination of the contents of the packages, to the extent that the private party had opened the packages, was lawful under the plain-view doctrine. *Id.* at 661, 100 S.Ct. at 2404, 65 L.Ed.2d at 420 (White, J. concurring).

to establish beyond a reasonable doubt that defendant intended to deliver the cocaine to another individual.[5] The state relies on *State v. Reis,* R.I., 430 A.2d 749 (1981), in support of the proposition that the trial justice was not clearly wrong. In *Reis* a jury convicted the defendant of possession of a controlled substance with intent to deliver. Police had discovered that the defendant had possessed approximately 900 pills. He had divided the pills equally and had packaged them in nine separate plastic bags that he had kept in his home and car. We found that this evidence was sufficient for the trial justice to submit the case to the jury on the issue of intent. *Id.,* 430 A.2d at 750–51. The state submits that the bare possession of 34.5 grams of 75 percent pure, loosely packaged cocaine in this case is equally sufficient to support a conviction for possession of a controlled substance with intent to deliver. We disagree.

The facts in this case are distinguishable from those in *Reis.* Unlike the police in *Reis,* the officers who arrested defendant discovered no evidence of packaging that might indicate an intent to deliver. Moreover, in *Reis* police officers had conducted surveillance on the defendant's home prior to his arrest and had observed suspicious interaction between the defendant and other individuals. In this case, the only evidence of this sort was that a companion accompanied defendant to the Federal Express office. The state introduced no evidence that defendant intended to deliver the cocaine to his companion.

Other than *Reis,* the state cites no cases in its brief that support the proposition that possession of 34.5 grams of 75 percent pure cocaine, without more, is sufficient to sustain defendant's conviction of possession with intent to deliver. The defendant, on the other hand, points to several cases that address the propriety of drawing an inference of intent to deliver from possession of certain quantities of various drugs. These cases establish that in certain circumstances a factfinder may draw such an inference. *See, e.g., United States v. Staten,* 581 F.2d 878, 886 (D.C.Cir.1978); *United States v. James,* 494 F.2d 1007, 1031 (D.C.Cir.), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *Salzman v. State,* 49 Md.App. 25, 55–56, 430 A.2d 847, 864–65 (1981).

The defendant suggests, however, that these cases are distinguishable. He contends that in this case, unlike in the cases that he cites, no independent circumstances or additional evidence concerning intent to deliver existed to justify the inference that defendant possessed the cocaine with such an intent. Moreover, defendant asserts that this court should not sustain a conviction for possession with intent to deliver when the evidence offered to establish a scheme of distribution equally demonstrates possession for personal use. Relying on *Tibbs v. Florida,* 457 U.S. 31, 38 n. 11, 102 S.Ct. 2211, 2216 n. 11, 72 L.Ed.2d 652, 658–59 n. 11 (1982), defendant argues that the proposition emanates from the general rule that in a case that rests upon circumstantial evidence, the inference of guilt must be substantial in order to sustain a conviction. We are of the opinion that defendant's reliance on *Tibbs* is not helpful to our determination of the case. In *Tibbs* the Supreme Court addressed the amorphous distinction between appellate review of a conviction based upon evidentiary weight and review based upon evidentiary sufficiency. We are not confronted with such an issue here. The sole question before us is wheth-

---

5. In the case at bar defendant moved for judgment of acquittal at the close of the state's evidence. The trial justice denied the motion, whereupon defendant declined to introduce evidence and rested. Thereafter the court, acting as trier of fact as well as of law, proceeded to decide the case on its merits. For purposes of our review, we shall consider only whether the trial justice's decision on the merits was clearly wrong since, implicit in the decision on the merits, would be all of the elements required to determine the motion for judgment of acquittal, but without the constraints placed upon the trial justice by such a motion (viewing the evidence in the light most favorable to the state and drawing all reasonable inferences consistent with guilt).

er or not the trial justice was clearly wrong in finding defendant guilty beyond a reasonable doubt—that is, did he misconceive or overlook material evidence, or was he otherwise clearly wrong. *See State v. Welch,* 441 A.2d at 541–42.

■ As we undertake a determination of this question, we are mindful of the state's constitutional obligation to prove all facts necessary to establish guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970); *Infantolino v. State,* R.I., 414 A.2d 793, 795 (1980). The state may use direct or circumstantial evidence, or both, and reasonable inferences derived therefrom in fulfilling this obligation. *Cf. State v. Proulx,* R.I., 419 A.2d 835, 841 n. 4 (1980) (all evidence—both circumstantial and direct—must sustain guilty finding beyond a reasonable doubt).

■ As we have indicated, the trial justice inferred an intent to deliver because of the amount of cocaine that defendant possessed at the time of his arrest, the nature of the transaction between Robinson and defendant, the manner in which Robinson shipped the package, and the manner in which defendant picked it up. This inference was the sole basis of the trial justice's finding of guilt beyond a reasonable doubt. We are of the opinion that the factors upon which the trial justice relied fail to support beyond a reasonable doubt the conclusion of intent to deliver. Accordingly, the evidence was insufficient to support a guilty finding on this element.

The secretive nature of the transaction and the use of a private courier service for delivery of the package to defendant indicate only that the parties sought to avoid detection by law enforcement officials. They certainly would have sought to attain the goal even if defendant had purchased the cocaine solely for personal use because the bare possession of such a controlled substance violated § 21–28–4.01(C).

The amount of cocaine that defendant possessed was the final factor upon which

the trial justice relied. Scovel testified that defendant possessed no cutting substance or materials to prepare the cocaine for delivery to other individuals. Moreover, he testified that cocaine could be ingested in purities of up to 100 percent and that he was unable to say to what use defendant intended to put the cocaine. Furthermore, the state introduced no evidence concerning the amount of cocaine that one individual could reasonably consume or concerning the question of whether defendant had previously engaged, or had planned to engage, in drug-dealing activities. We are of the opinion that Scovel's testimony and the state's failure to offer additional evidence tended to negate rather than support proof of the element of intent to deliver. The trial justice, however, misconceived and overlooked this evidence when he concluded that defendant's possession of 34.5 grams of 75 percent cocaine demonstrated an intent to deliver beyond a reasonable doubt. Accordingly, we find that the trial justice's finding of intent to deliver was clearly wrong.

By so holding, however, we in no way intimate that possession of a large amount of a controlled substance may not suffice to justify an inference of intent to deliver beyond a reasonable doubt. We find only that the amount in this case was at best equivocal on this issue. Possession of such an amount in conjunction with the lack of other evidence that might support such an inference, was insufficient to meet the quantum of proof required to establish this element of the crime. We observe that in order to achieve proof beyond a reasonable doubt in respect to a key element of a criminal offense, an inference must be solidly based upon evidence that points with certainty toward the required conclusion.

IV

*Disposition upon Remand*

■ At this juncture, we must address the future course of this case in the trial court. Our finding that defendant's conviction was in part based upon insufficient evidence poses a question whether to dis-

miss the case entirely. We decline to do so for the reasons that follow.

At trial, counsel for defendant expressly conceded that the state had proved that defendant "possessed" cocaine at the time he was arrested. Without question evidence on this point was overwhelming. Possession of a controlled substance at the time of this offense (as now) violated § 21–28–4.01(C). Furthermore this offense was a lesser-included offense of possession of a controlled substance with intent to deliver, in violation of § 21–28–4.01(A). *Sharbuno v. Moran,* R.I., 429 A.2d 1294, 1295 (1981); *see State v. Sundel,* 121 R.I. 638, 646, 402 A.2d 585, 590 (1979). Accordingly, in a jury trial of a charge of possession with intent to deliver, the trial justice would instruct the jury on the elements of the lesser offense and they could possibly find the defendant guilty of possession rather than the charged offense. *See id.* Clearly, this alternative was available to the trial justice in this case if he had determined, as he should have, that the state had failed to prove intent to deliver beyond a reasonable doubt. *See* G.L.1956 (1981 Reenactment) § 12–17–14.

In *Dickenson v. Israel,* 482 F.Supp. 1223, 1225 (E.D.Wis.1980), the federal court recognized that "[s]tate and federal appellate courts have long exercised the power to reverse a conviction while at the same time ordering the entry of judgment on a lesser-included offense." This court has never availed itself of the opportunity to adopt this practice, but we shall implement it in this case. Courts in other states have applied the remedy in drug-offense cases when the evidence supported a finding of possession but not a finding of intent to sell. *See Redden v. State,* 281 A.2d 490, 491 (Del.1971); *State v. Smith,* 4 Kan.App.2d 149, 152–53, 603 P.2d 638, 642 (1979); *see also State v. Grant,* 177 Conn. 140, 147–48,

411 A.2d 917, 920 (1979) (conviction of attempted burglary in first degree reduced to attempted burglary in third degree); *People v. Monaco,* 14 N.Y.2d 43, 47, 197 N.E.2d 532, 535, 248 N.Y.S.2d 41, 45 (1964) (second-degree-murder conviction reduced to first-degree manslaughter); *Miller v. State,* 426 A.2d 842, 845 (Del.1981) (first-degree arson to second-degree arson). *But see State v. Girouard,* 135 Vt. 123, 126, 373 A.2d 836, 838–39 (1977). Moreover, a statute gives federal courts the authority to reduce a conviction to a lesser-included offense as long as such procedure does not prejudice the defendant. 28 U.S.C.A. § 2106 (West 1982); *see, e.g., United States v. Swiderski,* 548 F.2d 445, 452 (2d Cir.1977); *Austin v. United States,* 382 F.2d 129, 140–43 (D.C. Cir.1967); *Dickenson v. Israel,* 482 F.Supp. at 1225. We are of the opinion that a reduction of defendant's conviction to the lesser-included offense of possession of a controlled substance would serve the interests of justice and would not prejudice defendant since the sufficiency of evidence on this charge is uncontroverted on appeal.

Accordingly, on remand the following must occur. First, the trial justice must reconsider defendant's motion to suppress the cocaine from introduction into evidence. He should order the parties to address the propriety of the warrantless field test, and he may take further evidence on this issue if he deems it appropriate to do so. Specifically, the parties should address whether the test was a "significant expansion" of the lawful private search and, if so, whether the "exigent circumstances" exception to the warrant requirement justified the absence of a warrant in this case [6]. We caution the state, however, not to assert exigencies that we have determined are inapplicable or to contend that the "plain view" doctrine could have justified the field test.

6. The precise issue presented in this case has been accepted for review by the Supreme Court of the United States in *United States v. Jacobsen,* 683 F.2d 296 (8th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983). In the event that the opinion is issued during the course of the remand, or upon subsequent review by this court, such opinion should be of considerable guidance in the formation of conclusions of law upon the facts as found by the trial justice.

If the trial justice's determination of the motion to suppress results in affirmance of the propriety of the cocaine's being admitted into evidence, the conviction of the defendant for possession of a controlled substance with intent to deliver will be vacated. The trial justice must then enter a judgment of conviction for possession of a controlled substance and resentence the defendant accordingly. On the other hand, if the trial justice grants the motion to suppress, he must dismiss the information because there would then be no evidence to support either charge. In any event, either the state or the defendant may appeal the trial justice's ruling on the motion to suppress if aggrieved thereby.

For the reasons stated, the defendant's appeal is sustained in part and denied in part. The papers in the case are ordered to be remanded to the Superior Court for further proceedings in accordance with this opinion.