DECISION
The instant matter arises out of a motion to increase the privileges of Anthony Tavares brought by Karen Clark, Legal Counsel for Department of Mental Health, Retardation and Hospitals (hereinafter MHRH). The motion sets forth certain facts in support thereof. A preliminary discussion of such facts in summary form is appropriate.
Mr. Tavares was first admitted to the Forensic Unit of Eleanor Slater Hospital on November 14, 2001 after a determination that he was incompetent to stand trial. On October 10, 2004, Mr. Tavares was found not guilty by reason of insanity for the murder of Glen Hayes, a social worker at Mental Health Services.[1] Mr. Tavares has since been committed to the custody of the Director of MHRH pursuant to G.L. 1956 § 40.1-5.3-4(e).[2] Mr. Tavares has recently been evaluated by Dr. Pedro P. Tactacan, who is his treating psychiatrist. Dr. Tactacan indicates that Mr. Tavares has shown significant clinical improvement since his initial commitment. Dr. Tactacan indicates that Mr. Tavares has not exhibited any assaultive or aggressive behavior, even when provoked, since February 3, 2006. Dr. Tactacan indicates that the overall behavior of Mr. Tavares remains stable and Mr. Tavares has adhered to all medications faithfully. *Page 2 
Mr. Tavares has enjoyed "on-site" privileges for almost five years at MHRH. Said privileges consist of attending "groups programming" on MHRH grounds but outside of the forensic unit four times per week for approximately three hours at a time. During these particular times, Mr. Tavares is accompanied by one mental health worker. The instant motion alleges that there has been "no behavioral difficulties during the exercise of these privileges."[3] The instant motion further alleges that "[d]espite the significant improvement exhibited by Mr. Tavares, he is still in need of a supervised setting."[4]
The Forensic Review Committee considered an increase in privileges for Mr. Tavares including "off-site" supervised privileges. The instant motion alleges that the instant request "is the next therapeutic step in the course of rehabilitation for Mr. Tavares." MHRH indicates that if Mr. Tavares is given "off-site" supervised privileges, he would "at all times, remain supervised by one mental health worker within arms length as well as additional support staff with the group at all times."
The motion requests the Superior Court to grant permission to authorize the extended privileges on behalf of Mr. Tavares pursuant to §§ 40.1-5.3-13 and 40.1-5.3-14.[5] The State objects to the granting of the motion.
 ANALYSIS
An examination of the particular statutory sections applicable to the instant motion is in order. Section 40.1-5.3-4(e) provides: *Page 3 
 (e) Commitment of person. If the Court finds that the person is not dangerous it shall order that he or she be discharged at once. If the Court finds that the person is dangerous it shall commit him or her to the custody of the director for care and treatment as an inpatient in a public institution. A person committed under this subsection shall not be paroled, furloughed, placed on outpatient status, or released from a locked facility or otherwise released from the institution where he or she is being treated except upon petition to the Court by the director, on notice to the attorney general and the person or his or her counsel, and entry of an order by a judge of the Court authorizing the release. (emphasis added).
In the instant case, the Court originally found Mr. Tavares was dangerous and he was committed to the custody of the Director of MHRH. Mr. Tavares, through Counsel, suggests that he is entitled to the increase in privileges over the objection of the State for several reasons. Mr. Tavares suggests that the rights granted to him under §§ 40.1-5.3-13 and 40.1-5.3-14 provide that he may be given the increased privileges without Court approval because they involve treatment and no Court approval is required for treatment. Section 40.1-5.3-13 appears to be addressed to the "general rights" of an individual committed for care and treatment under Chapter 40.1-5.3. The Court finds it to be of limited help in analyzing the present issue:
 § 40.1-5.3-13 General rights. — (a) Every person committed for care and treatment under the provisions of this chapter shall retain certain constitutional and civil rights. The exercise of these rights may be limited only for good cause, and any limitation must be promptly entered into the person's record. These rights include, but are not limited, to the following:
 (1) To be visited privately by a personal physician, attorney, clergyperson, or the mental health advocate, and by other persons at all reasonable times;
 (2) To be provided with stationery, writing materials, and postage in reasonable amounts and to have free unrestricted, unopened, and uncensored use of the mail; *Page 4 
 (3) To wear one's own clothes, keep and use personal possessions, have access to individual storage space for private use, and reasonable access to the telephone to make and receive confidential calls;
 (4) To seek independent examinations and opinions from a psychiatrist or mental health professional of his or her choice;
 (5) To receive and read literature;
 (6) To have access to the mental health advocate upon request;
 (7) Not to participate in experimentation in the absence of the person's informed, written consent, or if incompetent, upon an order of substituted judgment;
 (8) To freedom from restraint or seclusion, except during and emergency;
 (9) To exercise the rights described in this section without reprisal, including reprisal in the form of denial of any appropriate and available treatment or any right or privilege;
 (10) To have an opportunity for exercise at least one hour each day.
 (b) For the purposes of this section, "emergency" is defined as an imminent threat of serious bodily harm to the patient or to others. A request for informed consent includes a reasonable explanation of the procedure to be followed, the benefits to be expected, the relative advantages of alternative treatments, the potential discomforts and risks, and the right and opportunity to revoke the consent.
Mr. Tavares urges the Court to consider section (a) (8) above and allow Mr. Tavares to obtain the increase in privileges and to be "free from restraint" except during an emergency, which is defined in section (b) as an "imminent threat of serious bodily harm to the patient or to others." Mr. Tavares urges the Court to construe Dr. Tactacan's report as indicating that there is *Page 5 
no such "imminent" threat. Additionally, Mr. Tavares relies on the wording of § 40.1-5.3-14 which provides:
 40.1-5.3-14 Right to treatment — Treatment plan. — Any person who has been committed or transferred to a facility for care and treatment pursuant to this chapter shall have a right to receive the care and treatment that is necessary for and appropriate to the condition for which he or she was committed or transferred and from which he or she can reasonably be expected to benefit. Each person shall have an individualized treatment plan. This plan shall be developed by appropriate mental health professionals, including a psychiatrist. Each plan must be developed within ten (10) days of a person's admission to a facility.
Mr. Tavares urges the Court to note that there is no provision in either of the above sections indicating that Court authorization is necessary as a matter of general rights, (unless there is an "emergency" as defined in that subsection), or as a right to treatment. Hence, Mr. Tavares urges that the instant matter is a "civil matter" and there need not be any submission to the Court's authority. Counsel for Mr. Tavares has specifically made this reservation on the record at the time the motion was argued on January 8, 2009 and maintains that his appearance for Mr. Tavares is not a submission to the Court's authority to make this determination.
Mr. Tavares, in subsequent points, also urges the Court to give great deference to the decision of MHRH[6] to expand the privileges of Mr. Tavares. He further urges that the word "commitment" ought to be defined expansively by this Court and refers the Court to In re AnthonyTavares, 885 A.2d 139, 148 (R.I. 2005). Ostensibly, Mr. Tavares is especially referring to a passage wherein the Supreme Court sets forth the proposition that a Court should not apply a literal reading of a statute when doing so would defeat or frustrate the legislative intent. (Citations omitted.) Mr. Tavares explicitly points out that MHRH is not asking for Mr. Tavares' status to change to allow for *Page 6 
an unsupervised presence in the community. The instant motion only requests "additional privileges" and that the motion should be considered for "what it is" and urges the Court to grant same.
The State, in its objection, maintains that to follow Mr. Tavares' request would, in effect, amount to Mr. Tavares being "otherwise released" within the meaning of § 40.1-5.3-4(e) without Court authorization. That same section also prohibits "outpatient status," as well as "release from a locked facility" within the meaning of that section. To be clear, the Superior Court did sign off on the existing privileges for Mr. Tavares allowing him the "on-site" privileges he currently enjoys. The State maintains that Mr. Tavares' unsupervised presence in the community would create a likelihood of serious harm to others. (Footnote 4, supra.) The law presently provides for a periodic six-month review regarding the issue of whether a committed person's unsupervised presence in the community will create a likelihood of serious harm. (See § 40.1-5.3-4(f).) The law also allows a committed person to petition the Court to review his or her condition at any time. (See § 40.1-5.3-4(g).) If a committed person does so petition the Court, the statute provides that the Court shall hold a hearing to determine whether the person's presence in the community will create a likelihood of serious harm. (See § 40.1-5.3-4(h).)
A determination of whether allowing the increase in privileges,without Court authorization, amounts to an "otherwise release," outpatient status," or "release from a locked facility" within the meaning of § 40.1-5.3-4(e) depends upon the situation that Mr. Tavares would be placed into. MHRH has indicated preliminarily that Mr. Tavares would be taken "off-site" for field trips. A suggestion that the Lincoln Mall would be among such field trips is among the possibilities thus far. In a letter to the Court dated December 10, 2008, Dr. Tactacan writes that "The Forensic *Page 7 
Clinical Treatment Team supports and recommends that his (Mr. Tavares') privileges be increased to include attendance to off site day programming. This will allow him to access therapeutic group activities off grounds on 1:1 individualized supervision along with additional staff necessary through the progression of his hospitalization." Given Mr. Tavares' position that no Court permission is required because the increased privileges are recommended under the rubric of "treatment," the ambivalence of the MHRH position on the issue, [7] and the State's vigorous objection, this Court must determine a threshold issue before proceeding further.
 THRESHOLD ISSUE
Threshold issue, as suggested by the Court above, involves whether the "situation" that Mr. Tavares would be placed into by virtue of granting him increased privileges without Court authorization, would amount to an "otherwise release," "outpatient status," or "release from a locked facility" within the meaning of § 40.1-5.3-4(e). Given the gravity of the consequences in a "worst case" scenario, it is important to be precise when defining the situation. The very word "situation" lends itself to a query of what exactly is meant by same.
The Random House Unabridged Dictionary defines the word "situation" in part as "manner of being situated; location or position with reference to environment." Another part of the same definition would include "state of affairs; combination of circumstances." The Random House publication also includes a definition including: "Sociology, the aggregate of biological, psychological, and socio-cultural factors acting on an individual or group to condition behavior *Page 8 
patterns."[8] Black's Law Dictionary defines "situation" as "position as regards to conditions and circumstances." Webster's New CollegiateDictionary defines the word, "situation" as "a position with regards to conditions and circumstances; the sum total of internal and external stimuli that act upon an organism within a given time interval." Suffice it to say that at this juncture, a "situation" is an abstract concept consisting of a host of variables involving real people, a real environment, real interactions, and internal and external stimuli, all occurring in real time components. While the Court's analysis of the law and its sections should not be done in such a literal manner as to frustrate legislative intent, a determination of the threshold issue requires the Court to consider all relevant facts and circumstances including the specifics of the proposed increase in privileges including exactly what is proposed, what the setting includes, exactly who is involved, and a determination of the chronological duration and frequency of occurrence of each "off site" component. This consideration cannot be made or conducted in a vacuum. See e.g. State v. Eisman,461 A.2d 369, 379 (1983) (exigency cannot be determined in a vacuum); andProvidence Fraternal Order of Police Lodge No. 3 v. The ProvidenceJournal Company, 1984 WL 559229, at *2 (R.I. Jan. 17, 1984); (a determination as to whether defamatory statements can reasonably be construed to apply to a plaintiff is a question of law for the Court but the Court cannot make that determination in a vacuum). In order to decide whether the increased privileges requested will amount to an "otherwise release," "outpatient status," or "release from a locked facility" within the meaning of § 40.1-5.3-4(e), the Court will need to conduct an evidentiary hearing on that issue alone. If the Court concludes that the increased privileges, as specifically requested, will not amount to an "otherwise release," "outpatient status," or "release from a locked facility" within the meaning of § 40.1-5.3-4(e), then the Court need not weigh in on the MHRH motion. If the Court finds that said request for *Page 9 
increased privileges does indeed amount to an "otherwise release," "outpatient status," or "release from a locked facility" within the meaning of § 40.1-5.3-4(e) the parties will need to proceed to another step in the analysis where the likelihood of serious harm is assessed under the provisions of 40.1-5.3-4 (h) as discussed above.
 JURISDICTION OF THE SUPERIOR COURT ON SUCH ADETERMINATION
Rhode Island General Laws 1956 § 9-30-2 provides in pertinent part:
 ". . . any person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."
Pursuant to Rhode Island General Laws § 9-30-1, the declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.
Notwithstanding the civil nature of the Uniform Declaratory Judgments Act, Mr. Tavares has a significant liberty interest at stake in this matter. While MHRH's interests appear to coincide with Mr. Tavares' interest at this moment, there is no guarantee that they will continue to do so. The situation, insofar as Mr. Tavares' representation by counsel is concerned, is more akin to the civil miscellaneous petition for bail brought pursuant to the Court Rules.[9] The Court urges the Public Defender to continue to represent Mr. Tavares. *Page 10 
 CONCLUSION
Given the necessity of resolving the threshold issue, the motion before the Court is denied without prejudice. Mr. Tavares, MHRH, or the State may bring further proceedings, in their discretion, as they may deem appropriate. However, in the event that MHRH should hereafter take the position that no Court approval is required in order to increase Mr. Tavares' privileges, they shall give the State thirty (30) days notice before commencing such action in order to give the State an opportunity to respond accordingly. Counsel shall submit an appropriate order.
[1] A fuller version of the factual background is set forth in the case of In re Anthony Tavares, 885 A.2d 139, at 141-144 (R.I. 2005) (certiorari to review Mr. Tavares' commitment status at that time).
[2] The precise wording of this particular subsection will be discussed in full later in this decision.
[3] A complete reading of the records indicates that the "on-site" privileges were granted pursuant to a motion to increase privileges brought before the Superior Court at the time.
[4] Significantly, in Dr. Tactacan's report dated October 28, 2008, he states in his summary of opinion, "In my opinion, as treating psychiatrist, at this time, Mr. Tavares' (sic) unsupervised presence in the community would create a likelihood of serious harm toothers."
[5] Precise wording of both subsections discussed infra.
[6] As recommended by the Forensic Review Committee — See paragraph 5 of Motion.
[7] When the Motion was argued on January 8, 2009, MHRH, through counsel, adopted Mr. Tavares' arguments in Court that day. However, the instant Motion still "requests permission to authorize extended privileges." See Motion page 2. Past motions have also sought Court approval in order to increase privileges. At this juncture, it is at least plausible that MHRH, as an institution, may ultimately take the position that the increase in privileges amounts to an "otherwise release," "outpatient status," or "release from a locked facility" within the meaning of § 40.1-5.3-4(e) and requires Court authorization.
[8] Dictionary.com Unabridged (v 1.1) based on the Random HouseUnabridged Dictionary, © Random House, Inc. 2006 last visited January 19, 2009. Italics in original.
[9] See Super. R. Crim. P. 5(a).