UNITED STATES of America

v.

Bobby STATEN, Appellant.

No. 76–1747.

United States Court of Appeals, District of Columbia Circuit.

Argued April 22, 1977.

Decided May 9, 1978.

Matthew W. Black, Jr., Washington, D. C. (appointed by this Court), for appellant.

Richard H. Saltsman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Edward C. McGuire, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

At a jury trial in the District Court, appellant was convicted of possession of marijuana [1] and of possession of heroin and methylphenadate with intent to distribute.[2] He now presses two claims for our consideration. One is that the evidence was legally insufficient to prove that he possessed the drugs, and resultantly that the court should have granted his motion for a judgment of acquittal.[3] The other is that the court's instruction authorizing the jury to predicate guilt on a finding of aiding and abetting the possession was improper and prejudicial.[4] We perceive no error in either respect and accordingly affirm.

I

The events generating the prosecutions are well nigh undisputed.[5] Armed with a search warrant, issued upon an affidavit alleging drug-peddling by one Bobby Arnold,[6] several police officers arrived at an apartment to execute the search. One officer, in plain clothes, knocked on the door and asked the woman answering, later identified as Versinia Thompkins, whether

---

1. D.C.Code § 33–402 (1973).

2. 21 U.S.C. § 841(a) (1976); D.C.Code § 33–402 (1973).

3. Discussed in Part II *infra*.

4. Discussed in Part III *infra*.

5. Appellant's trial took place on three consecutive days. In adverting to trial events, we use

"Tr. I" to refer to the proceedings on the first day and the earlier part of the second, and "Tr. II" to refer to those during the remainder of the trial.

6. The affidavit alleged that Arnold was packaging and selling heroin in the apartment. Tr. I 309–310.

"Bobby" was there.[7] Ms. Thompkins replied in the negative and asked whether the officer wanted anything. At this point another officer, previously concealed in the hallway, stepped to the door, announced that they were police with a warrant, and demanded entry. Ms. Thompkins slammed the door immediately, turned the locks, and refused further response.[8] By use of a sledgehammer the door was broken, and entry was gained about five minutes later.[9]

The apartment was a one-room affair, with a living area on one side and a kitchen area on the other.[10] Once inside, the officers saw Ms. Thompkins standing near the kitchen sink, the garbage disposal running.[11] Appellant was standing approximately five feet away near the kitchen table.[12] One of the officers turned off the disposal and another arrested the two occupants.[13]

The officers then proceeded to search. Two $20 bills, shredded plastic, and a plastic bag containing 3,400 milligrams of 2.5% heroin were taken from the disposal.[14] Small plastic bags, of the type used in the retailing of narcotics,[15] protruded from an envelope on the kitchen table.[16] Another envelope thereon contained adding machine tapes, personal papers and receipts in Bobby Arnold's name.[17] Notebooks and a pad of paper—all with figures in dollar amounts [18] —$35 in cash and an envelope enclosing methylphenadate were also lying on the table.[19] Atop a cabinet in the kitchen was an envelope of marijuana,[20] along with a strainer, spoons and playing cards.[21] A breadbox located on top of the refrigerator yielded $600 in cash.[22]

When the officers examined male and female clothing hanging in a closet, they uncovered two tinfoil packets of 2.9% heroin in a leather coat [23] and a bag of 3.1% heroin in another coat.[24] In a third coat were a plastic vial of methylphenadate and a tinfoil packet of 2.6% heroin.[25] A plastic bottle containing 310 tablets of methylphenadate resided on a closet shelf,[26] as did appellant's "North Carolina special identification card." [27] Also found inside the closet were several albums of photographs—some of Ms. Tompkins together with Bobby Arnold and other persons—which had been taken inside the apartment.[28]

Searching appellant, the officers removed $65 in wet currency and a wet bag containing 3,400 milligrams of a 2.1% heroin mixture from his lower right jacket pocket.[29]

7. Tr. I 187.

8. Tr. I 210–211.

9. Tr. I 212.

10. Tr. I 331–332.

11. Tr. I 212.

12. Tr. I 200, 216.

13. Tr. I 216.

14. Tr. I 217, 243–244, 257.

15. See note 21 infra.

16. Tr. I 255–256.

17. Tr. I 295.

18. Tr. I 275–276.

19. Tr. I 241, 263, 269.

20. Tr. I 329–330, 262.

21. Tr. I 330. Small amounts of heroin, procaine and caffeine on one of the measuring spoons were detected by chemical analysis. Tr. I 236. Defense counsel stipulated that the spoons, cards, strainer and plastic bags were items commonly used to "cut" drugs in preparation for retail sale. Tr. II 24–25.

22. Tr. I 268.

23. Tr. I 240, 262–263.

24. Tr. I 243, 265–266.

25. Tr. I 242, 264.

26. Tr. I 244, 267.

27. Tr. I 287. It is unclear from the record whether the bottle of Ritalin tablets and the identification card were on the same shelf of the same closet. Tr. I 267, 287.

28. Tr. I 278–286.

29. Tr. I 238, 258, 261. One of the officers asked appellant why he put these items in his pocket. Appellant's response implied that he "didn't want to see it go to waste." Tr. I 260.

In an upper pocket were $100 in dry currency[30] and a key to one of the two locks on the door to the apartment.[31] Testimony established the value of all of the seized drugs at more than $2,000, and the quantity in excess of that normally kept for personal use.[32]

## II

Possession of a forbidden substance is an essential element of each of the offenses of which appellant was convicted.[33] Appellant's first contention is that the Government's evidence was insufficient to connote his possession of any of the drugs found in the apartment other than those removed from his person. In support of that claim, appellant argues that the proven facts do not associate him with the apartment or its tenants[34] prior to the day of arrest.[35] Both at the close of the Government's case in chief and again after presentation of his own evidence, appellant moved for a judgment of acquittal. Each time the trial judge, deeming the evidence deserving of submission to the jury, denied the motion,

and the appellant challenges these rulings on this appeal.

The governing procedural principle is well settled. A motion for a judgment of acquittal, we have said, "*must* be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime."[36] That guilt must be established beyond a reasonable doubt is " 'a basic principle in our jurisprudence,' "[37] and unless that result is possible on the evidence, " 'the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence.' "[38] But, as quite recently we re-emphasized, " '[i]t is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury.' "[39] And "[i]n applying this standard no legal distinction is made between circumstantial and direct evidence."[40]

---

30. Tr. I 261.

31. Tr. I 272, 273. No drugs were found on Ms. Thompkins' person. Tr. I 195.

32. Tr. II 27–29.

33. See cases cited *infra.*

34. The apartment had been leased to Bobby Arnold who was identified from the photographs found therein. Tr. I 178, 182. As appellant points out, there was no direct evidence connecting appellant and Arnold. Appellant also emphasizes the interrelationship of Arnold, Ms. Thompkins and the apartment: the photographs of Arnold and Ms. Thompkins taken therein, Tr. I 281–286; jeans of Ms. Thompkins in the apartment, about to be ironed, Tr. I 271; an envelope of developed photographs bearing Ms. Thompkins' name and the apartment address, Tr. I 278; and a photographic identification of Arnold found in the pocket of a coat in the clothes closet, Tr. I 274.

35. The only defense witness testified that twelve hours before the search she drove appellant to the apartment, from which he was to leave to visit an aunt in Baltimore. Tr. II 56–58, 60.

36. *Austin v. United States,* 127 U.S.App.D.C. 180, 189, 382 F.2d 129, 138 (1967) (emphasis in

original). Accord, *United States v. Watkins,* 171 U.S.App.D.C. 158, 161, 519 F.2d 294, 297 (1975); *United States v. Bethea,* 143 U.S.App. D.C. 68, 70, 442 F.2d 790, 792 (1971); *United States v. Lumpkin,* 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971); *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1962).

37. *Bailey v. United States,* 135 U.S.App.D.C. 95, 98, 416 F.2d 1110, 1113 (1969), quoting *Cooper v. United States,* 94 U.S.App.D.C. 343, 346, 218 F.2d 39, 42 (1954).

38. *Bailey v. United States, supra* note 37, 135 U.S.App.D.C. at 98, 416 F.2d at 1113, quoting *Cooper v. United States, supra* note 37, 94 U.S.App.D.C. at 346, 218 F.2d at 42.

39. *United States v. Davis,* 183 U.S.App.D.C. 162, 164–165, 562 F.2d 681, 683–684 (1977), quoting *United States v. Fench,* 152 U.S.App. D.C. 325, 333, 470 F.2d 1234, 1242, *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973), and *United States v. Lumpkin,* 145 U.S. App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971).

40. *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 165, 562 F.2d at 684, citing *Holland v. United States,* 348 U.S. 121, 139– 140, 75 S.Ct. 127, 137–138, 99 L.Ed. 150, 166–

To be sure, appellant had in his pockets only one of the three drugs that he was charged with possessing,[41] and only part of the sizeable cache in the apartment. But whether there was error in the denial of his motions depends upon whether the Government's evidence tended plausibly to indicate his criminal involvement with more.[42] That, we think, it did.

■ The possession vital to the convictions under review may, in familiar language, be either actual or constructive.[43] It thus is unnecessary to show that the accused had the drug on his person or within his immediate reach;[44] it is enough that he "was knowingly in a position or had the right to exercise dominion and control over" it,[45] either directly or through others.[46] Possession in that sense suffices though it is jointly shared,[47] and it may be established by circumstantial as well as direct evidence.[48]

■ We are aware of criticisms—on grounds of imprecision—of the constructive-possession doctrine, thus formulated, as a measure of the legal sufficiency of evidence to demonstrate drug-possession.[49] We think, however, that this adjudicative standard becomes acceptable when it is realized that the critical inquiry for judges is whether the factfinder can reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug.[50] Even were we free to do otherwise,[51] we would adhere to that concept in preference to artificial rules restricting evidence-sufficiency—rules that would inevitably invade the traditional province of the jury to assess the significance of circumstantial evidence, and to determine whether it eliminates all reasonable doubt as to whether the accused had that power.

■ The judge's function may extend, of course, to any of an almost infinite variety

167 (1954); *United States v. Fench, supra* note 39, 152 U.S.App.D.C. at 333, 470 F.2d at 1242.

41. See text *supra* at notes 1–2.

42. In reviewing the rulings on a motion for a judgment of acquittal made at the conclusion of the Government's case in chief, we may consider only the evidence as it was when the Government rested. *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 165, 562 F.2d at 684; *Powell v. United States*, 135 U.S. App.D.C. 254, 257 n.9, 418 F.2d 470, 473 n.9 (1969); *Austin v. United States, supra* note 36, 127 U.S.App.D.C. at 189, 382 F.2d at 138.

43. *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 165, 562 F.2d at 684; *United States v. Smith*, 171 U.S.App.D.C. 342, 344, 520 F.2d 74, 76, *aff'd after remand*, 173 U.S.App. D.C. 313, 524 F.2d 1287 (1975); *United States v. James*, 161 U.S.App.D.C. 88, 108, 494 F.2d 1007, 1027, *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974).

44. *United States v. Smith, supra* note 43, 171 U.S.App.D.C. at 344, 520 F.2d at 76.

45. *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 165, 562 F.2d at 684. "The evidence must be such . . . that a jury may infer that the person charged with possession had dominion and control of the narcotic drug, *United States v. Gary*, 447 F.2d 907, 909 (9th Cir. 1971); *Brothers v. United States*, 328 F.2d 151, 155 (9th Cir.), *cert. denied*, 377 U.S. 1001, 84 S.Ct. 1934, 12 L.Ed.2d 1050 (1964), or

that he knowingly had power to exercise dominion and control over the drug. *Amaya v. United States*, 373 F.2d 197 (10th Cir. 1967)." *United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir. 1972).

46. *United States v. Craig*, 522 F.2d 29, 32 (6th Cir. 1975).

47. *United States v. Bethea, supra* note 36, 143 U.S.App.D.C. at 71, 442 F.2d at 793; *United States v. Davis, supra* note 45, 461 F.2d at 1035.

48. *United States v. Bethea, supra* note 36, 143 U.S.App.D.C. at 71, 442 F.2d at 793; *United States v. Davis, supra* note 45, 461 F.2d at 1035.

49. *E. g.*, Whitebread & Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va.L.Rev. 751 (1972).

50. See cases cited *infra* notes 52–60.

51. This circuit is wedded to the constructive-possession doctrine, see cases cited *infra*, and we have "long adhered to the rule that a recent decision of one panel may not be overruled by another panel, but only by the court *en banc*." *United States v. Caldwell*, 178 U.S.App.D.C. 20, 56 n.19, 543 F.2d 1333, 1369 n.19 (1974) (supplemental opinion), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), and cases there cited.

of fact patterns, some decidedly more difficult to appraise than others. Perhaps the easiest is encountered when the drug is found on premises occupied by the accused and no one else,[52] a situation normally conducive to an inference that he had knowledge of and control over it, even when concealed on the premises.[53] The judge's task intensifies, however, when the accused's relationship to the premises is shared with others,[54] and consequently the problems of knowledge and control intensify.[55] This court has never held that nonexclusivity in the occupancy of the premises is fatal to the Government's cause,[56] nor do we so rule today. Rather, in full recognition of the increased difficulties that the Government then faces, we reiterate that the sufficiency of the evidence for jury consideration depends upon its capability plausibly to suggest the likelihood that in some discernible fashion the accused had a substantial voice vis-a-vis the drug.[57]

■ Several usable guidelines emerge from the decided cases. Mere presence of the accused on the premises, or simply his proximity to the drug, does not itself enable such a deduction.[58] Nor is mere association with another, standing alone, enough even when the other is known to possess the drug.[59] But, as has frequently been held,

52. *United States v. Smith, supra* note 43, 171 U.S.App.D.C. at 343–344, 520 F.2d at 75–76 (evidence sufficient where accused was the lessee and occupant, for at least three weeks, of premises in which drugs were concealed); *United States v. Belt,* 169 U.S.App.D.C. 1, 6, 514 F.2d 837, 842 (*en banc* 1975) (evidence sufficient where packet of heroin was thrown from window of bedroom occupied solely by accused, although she was not seen to have thrown it); see also *United States v. Herron,* 185 U.S.App.D.C. 403, 567 F.2d 510 (1977), at 3–8.

53. See note 52 *supra.*

54. *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 165–166, 562 F.2d at 684–685 (evidence sufficient); *United States v. Thompson,* 161 U.S.App.D.C. 339, 343, 344, 495 F.2d 165, 166, 167 (1974) (evidence sufficient); *United States v. Bonham,* 477 F.2d 1137, 1138–1139 (3d Cir. *en banc* 1973) (evidence insufficient); *United States v. Davis, supra* note 45, 461 F.2d at 1036 (evidence sufficient); *Walker v. United States,* 489 F.2d 714, 715 (8th Cir.), cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974) (evidence sufficient). *Cf. United States v. Watkins, supra* note 36, 171 U.S.App. D.C. at 162, 519 F.2d at 298 (hidden drugs, evidence insufficient).

"Where a person is the sole occupant of a room and has the right to exclude all others from it, it may logically be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence. . . . But the situation is different where two persons share the occupancy of a room and the right to exclude others from it. Depending upon the circumstances, either or both may have knowing dominion and control over a particular chattel, and choice between these alternatives must be based on more than speculation." *United States v. Bonham, supra,* 477 F.2d at 1138 (citation omitted).

55. Where premises are shared by two or more persons, the situation obviously differs when, on the one hand, drugs are hidden and, on the other hand, the drugs are in open view. Compare *United States v. Davis, supra* note 45, 461 F.2d at 1036, and *Walker v. United States, supra* note 54, 489 F.2d at 715, with *United States v. Bonham, supra* note 54, 477 F.2d at 1138–1139. In the first situation, "there [is] nothing except the joint occupancy of the [premises] upon which an inference of possession could be based. A fact finder could only speculate whether both of the [premises'] occupants or a particular one of them even knew of the cache, much less exercised control over the hidden contraband." *Id.* at 1139. In the latter situation, however, knowledge of the presence of the drug is apparent, and that in combination with other circumstances may suffice to enable a finding that all had a measure of control over it.

56. See cases cited *supra* note 54.

57. Compare cases cited *supra* note 54.

58. *United States v. Watkins, supra* note 36, 171 U.S.App.D.C. at 162, 519 F.2d at 298; *United States v. Bethea, supra* note 36; *United States v. Davis, supra* note 45, 461 F.2d at 1036; *United States v. Ratcliffe,* 550 F.2d 431, 434 (9th Cir. 1976). *Cf. Moore v. United States,* 429 U.S. 20, 22, 97 S.Ct. 29, 30, 50 L.Ed.2d 25, 28–29 (1976). Compare *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

59. *United States v. James, supra* note 43, 161 U.S.App.D.C. at 108, 494 F.2d at 1007; *United States v. Holland,* 144 U.S.App.D.C. 225, 227, 445 F.2d 701, 703 (1971); *United States v. Ratcliffe, supra* note 58, 550 F.2d at 434. *Cf. United States v. Davis, supra* note 45, 461 F.2d at 1036.

presence, proximity or association may establish a prima facie case of drug-possession when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part.[60] We agree, and we think this principle intercepts the case at bar.

An integral part of the Government's presentation was proof that appellant was in the apartment in company with a regular occupant [61] alongside contraband drugs and drug-distributing paraphernalia openly strewn about.[62] Beyond that, in total evidentiary context the jury quite reasonably could infer that neither his presence in the premises, his proximity to the drugs nor his association with Ms. Thomp-

kins was merely passive or innocent. His possession of a key to one of the two entrance locks,[63] coupled with the situs of his identification card on the shelf of the closet,[64] might plausibly have been taken as an indication that he was not just a casual visitor.[65] More critically, his presence in that one-room apartment reeking with telltale indicia of an ongoing drug-distributing enterprise [66] could rationally have been viewed as a privilege reserved exclusively for participants.[67] In so small an area, appellant certainly could not have been oblivious to the brawny effort the police made to get in to search,[68] and the jury could logically have inferred that he—like Ms. Thompkins—tried to cleanse the room of

---

**60.** *United States v. Ratcliffe, supra* note 58, 550 F.2d at 434 (assistance in unloading drug from plane); *United States v. Morando-Alvarez,* 520 F.2d 882, 884–886 (9th Cir. 1975) (flight; not "a passive occurrence such as a defendant's presence at the scene," but "striking an unequivocal action . . . . , *id.* at 886); *United States v. Hood,* 493 F.2d 677, 681 (9th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974) (wife, riding with husband in car with open briefcase under her legs, she made a gesture indicating an effort to conceal it, and the large quantity of heroin it contained); *United States v. Ogden,* 484 F.2d 1274, 1275 (9th Cir. 1973), *cert. denied,* 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974) (wife aware of husband's activities in growing and distributing marijuana, and had in her possession claim checks to three pieces of baggage containing marijuana and paraphernalia for making marijuana bricks); *Evans v. United States,* 257 F.2d 121, 128 (9th Cir.), *cert. denied,* 357 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958) (incriminating statements and circumstances); see also *State v. Hull,* 15 Ariz.App. 134, 486 P.2d 814, 815 (1971) (ostensible destruction of drugs); *Guthrey v. State,* 507 P.2d 556, 561 (Okla.Crim. App.1973) (attempted destruction of syringe and needle); *State v. La Barre,* 292 Minn. 228, 195 N.W.2d 435, 439, 441 (1972) (flight); *King v. State,* 169 Tex.Cr.R. 34, 335 S.W.2d 378, 379 (1959) (attempted flight).

"[W]hile mere proximity to illegal drugs, mere presence on the property where they are located, or mere association, without more, with persons who do control them is insufficient to support a finding of possession, . . . such proximity, presence, or association is sufficient when accompanied . . . with testimony connecting the defendant with the incriminating surrounding circumstances." *United States v. Ratcliffe, supra* note 58, 550 F.2d at 434 (citations omitted).

**61.** See text *supra* at note 12 and note 34 *supra.*

**62.** See text *supra* at notes 14–22.

**63.** See text *supra* at note 31; *United States v. Thompson, supra* note 54 (concealed drugs and paraphernalia); *Jackson v. United States,* 102 U.S.App.D.C. 109, 110–111, 250 F.2d 772, 773–774 (1957) (mere possession of keys to nephew's house and room within which drug was concealed insufficient); *Walker v. United States, supra* note 54, 489 F.2d at 714, 715 (heroin in view). Cf. *United States v. Herron, supra* note 52, at 6.

**64.** See text *supra* at note 27. While the presence of an accused's clothing on the premises is a circumstance to be considered, *Walker v. United States, . supra* note 54, 489 F.2d at 715, there was no showing here that any of those hanging in the closet belonged to appellant. Compare *United States v. Holland, supra* note 59, 144 U.S.App.D.C. at 226–227, 445 F.2d at 702–703.

**65.** The situation at bar is thus to be contrasted with that in *United States v. Holland, supra* note 59, 144 U.S.App.D.C. at 226–227, 445 F.2d at 702–703.

**66.** See text *supra* at notes 14–22.

**67.** It would seem that the voluntary presence of the accused in an area obviously devoted to preparation of drugs for distribution is a circumstance potently indicative of his involvement in the operation. See *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 165–166, 562 F.2d at 684–685. Compare *United States v. Gainey, supra* note 58.

**68.** See text *supra* at notes 6–9.

the drugs during the five minutes required for the forced entry.[69] Indeed, during this interval appellant admittedly concealed on his person heroin and money which just moments before had been destined for the garbage disposal.[70] In assessing the likelihood that appellant was connected with the illegal operation sufficiently to enable some control over its illicit wares, the jury was entitled to ponder the interrelationship of all of these evidentiary items.[71]

■ Nor did the Government's presentation suffer from any lack of foundation for a deduction that the drugs had been held for distribution. Our decisions in the recent past have made clear that intent to distribute may be inferred from possession of drug-packaging paraphernalia or of a quantity of drugs larger than needed for personal use.[72] Here the Government's proof extended to both.[73] An intent to distribute personally, we have added, is unnecessary as long as distribution by someone is the end purpose of the possession,[74] and that was hardly doubtful here. In sum, the evidence was susceptible to the interpretation that appellant was criminally involved in the criminal enterprise, and whether in fact he was or not was a question for the jury.

## III

■ Criminal accountability does not depend inexorably upon personal performance of the acts comprising an offense. He who assists the perpetrator of crime in its commission is as much answerable as if he had engaged in all of its essential aspects himself.[75] The trial judge instructed the jury to that effect in the case at bar, and that has led to a rash of objections in this court.

■ Certainly nothing about drug-possession offenses is so distinctive as to remove them from the ambit of aiding-and-abetting doctrine.[76] Nor was this case an inappropriate occasion for inquiry whether appellant was an aider and abettor since the Government's evidence hardly confined appellant's role to that of a principal. But, as heretofore we have observed, "[a] *sine qua non* of aiding and abetting . . . is guilty participation by the accused.".[77] As the Supreme Court has admonished, "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, and that he seek by his action to make it succeed.' "[78] So, "[t]he elements of the offense of aiding and abetting are: (1) guilty

**69.** Compare *United States v. Smith, supra* note 43, 171 U.S.App.D.C. at 344, 520 F.2d at 76; *United States v. Belt, supra* note 52, 169 U.S. App.D.C. at 6, 514 F.2d at 842; *State v. Hull, supra* note 60, 486 P.2d at 815; *Guthrey v. State, supra* note 60, 507 P.2d at 560–561.

**70.** See text *supra* at note 29.

**71.** See *United States v. Smith, supra* note 43, 171 U.S.App.D.C. at 344, 520 F.2d at 76. "Circumstantial evidence sufficient to support a jury's finding of guilt may be found in the accumulation of several relatively insignificant pieces of evidence, or it may be presented in the form of a single highly significant or incriminating event." *United States v. Morando-Alvarez, supra* note 60, 520 F.2d at 884–885.

**72.** *United States v. Herron, supra* note 52, at 185 U.S.App.D.C. at 406, 567 F.2d at 513; *United States v. Davis, supra* note 39, 183 U.S.App. D.C. at 166–167, 562 F.2d at 685–686; *United States v. James, supra* note 43, 161 U.S.App. D.C. at 112, 494 F.2d at 1031.

**73.** See Part I *supra*.

**74.** *United States v. Davis, supra* note 39, 183 U.S.App.D.C. at 167 n.5, 562 F.2d at 686 n.5.

**75.** See 18 U.S.C. § 2(a) (1976); D.C.Code § 22–105 (1973), and cases cited *infra*.

**76.** *United States v. Wiebold,* 507 F.2d 932, 934 (8th Cir. 1974) (possession with intent to distribute). As to aiding and abetting drug-distribution, see *United States v. Martinez,* 479 F.2d 824, 829–830 (1st Cir. 1973); *United States v. Licursi,* 525 F.2d 1164, 1167 (2d Cir. 1975); *United States v. Snow,* 537 F.2d 1166, 1169 (4th Cir. 1976).

**77.** *Bailey v. United States, supra* note 37, 135 U.S.App.D.C. at 98, 416 F.2d at 1113 (footnotes omitted).

**78.** *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, 925 (1949), quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir. 1938).

knowledge on the part of the accused; (2) that an offense was committed by someone; and (3) that the defendant assisted or participated in the commission of the offense."[79] With this illumination, we proceed to the two facets of appellant's argument that deserve, albeit marginally, some amount of discussion.[80]

The first is that the evidence was insufficient to show that the offenses in suit were committed by someone. To be sure, there must be a guilty principal before there can be an aider and abettor,[81] but here the proofs connoted plainly enough that somebody was culpable. As already we have held, a jury combining the circumstances displayed—the situs of the drugs in the apartment, their substantial quantity and value, and the presence there of large sums of money and adequate paraphernalia for packaging[82]—might reasonably find that whoever was responsible for those conditions had illicit distribution in mind.[83] The evidence did not, of course, conclusively single out either Bobby Arnold, Versinia Thompkins or appellant as captain of the enterprise, but that is beside the point. It was not essential that the principal in the operation be identified so long as someone had that status.[84]

Appellant also attacks the aiding-and-abetting instruction on the ground that the evidence, irrespective of any capability it might have had to establish illegal activity by others, could not support a finding that he aided and abetted. We believe, however, that appellant once again overlooks the potency of the Government's presentation. We have already expressed our view that the jury might properly conclude that at no moment was appellant's presence in the apartment innocent.[85] We have opined, too, that the jury could have inferred from the totality of the circumstances that appellant assisted Ms. Thompkins in the interrupted endeavor to remove the contraband completely from sight.[86] Nor can we overlook the importance of the conceded fact that during the process appellant concealed some of the drugs and money in his pockets in the apparent belief that he would not be searched.[87] At the very least, the jury would have been warranted in concluding that appellant tried to protect the drug-distributing operation either by salvaging some of its assets or by facilitating their disposal to thwart detection by the police.[88] If indeed the evidence did not tend to reflect greater participation on his part, no more than these was required.

The judgment of conviction appealed from is accordingly

*Affirmed.*

**79.** *United States v. Wiley,* 160 U.S.App.D.C. 281, 285, 492 F.2d 547, 551 (1973). See also *United States v. Harris,* 140 U.S.App.D.C. 270, 284 n.40, 435 F.2d 74, 88 n.40 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971).

**80.** Additional complaints respecting the instruction are registered. These we have examined, and found lacking in merit.

**81.** *United States v. Cades,* 495 F.2d 1166, 1167 (3d Cir. 1974); *United States v. Barfield,* 447 F.2d 85, 89 (5th Cir. 1971); *United States v. Jones,* 425 F.2d 1048, 1056 (9th Cir.), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *United States v. Rodgers,* 419 F.2d 1315, 1317 (10th Cir. 1969).

**82.** See text *supra* at notes 14–32.

**83.** See text *supra* at notes 72–74.

**84.** *Feldstein v. United States,* 429 F.2d 1092, 1095 (9th Cir.), *cert. denied,* 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970); *United States v. Austin,* 462 F.2d 724, 731 (10th Cir.), *cert. denied,* 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972).

**85.** See text *supra* at notes 63–67.

**86.** See text *supra* at notes 68–70.

**87.** See text *supra* at note 29.

**88.** Compare *United States v. James, supra* note 43, 161 U.S.App.D.C. at 104–105, 494 F.2d at 1023–1024; *Long v. United States,* 124 U.S. App.D.C. 14, 20–21, 360 F.2d 829, 835–836 (1966).