Alphonso R. WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–68.

District of Columbia Court of Appeals.

Argued April 12, 1994.
Decided Sept. 15, 1994.

Linda Elliott, Public Defender Service, with whom James Klein and Jo–Ann Wallace, Public Defender Service, were on the brief, for appellant.

M. Evan Corcoran, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Michael D. Brittin, and Elizabeth Trosman,

Asst. U.S. Attys., were on the brief, for appellee.

Before WAGNER, Chief Judge,* and SULLIVAN, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

A jury convicted appellant of second-degree murder while armed (D.C.Code §§ 22–2403 (1989 Repl.), –3202 (1993 Supp.)), three counts of attempted robbery while armed (D.C.Code §§ 22–2902 (1989 Repl.), –3202), possession of a firearm while committing a crime of violence (D.C.Code § 22–3204(b) (1993 Supp.)), and carrying a pistol without a license ("CPWOL") (D.C.Code § 22–3204(a) (1993 Supp.)). We affirm.

## I.

The record reflects that appellant and three cohorts armed themselves and then robbed three drug dealers who were selling their wares on Second Street, S.E. During this robbery, one of appellant's cohorts shot and killed with a pistol one of the victims. Appellant argues that there was insufficient evidence to support his conviction for CPWOL on a constructive possession theory.[1]

In evaluating a claim of insufficiency, "we must consider the evidence in the light most favorable to the government, giving the prosecutor the benefit of all reasonable inferences from the evidence." *Bernard v. United States,* 575 A.2d 1191, 1195 (D.C.1990). "Constructive possession requires two elements: knowledge of the presence of the object, and the right to exercise dominion over it, or stated differently, the 'ability to guide [its] destiny.'" *Jefferson v. United States, supra,* 558 A.2d at 304 (quoting *United States v. Hubbard,* 429 A.2d 1334, 1338 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981)).

While the issue is a very close one, the facts presented in the instant case, when viewed in the light most favorable to the government, are sufficient to establish that appellant had constructive possession of the murder weapon. *See Bernard, supra,* 575 A.2d at 1195–96; *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987).

In the instant case, appellant clearly had knowledge of the "presence" of the pistol at the scene. There was evidence that appellant participated in planning and preparing to commit the robbery. Appellant supplied three shotguns that were used in the robbery. He knew that the three shotguns and the pistol, used by Eric Rice during the fatal shooting, were loaded. At the time of the shooting, appellant was searching one of the robbery victims for drugs and money. When the shot rang out, he looked behind him and saw the decedent, Albert King, on the ground. Undaunted, appellant and his cohorts continued with the robbery.

Other factors support the government's theory that appellant had the ability to, and did, exercise control over the weapon. The manner in which the weapons were disposed of evidenced appellant's ability to "guide the destiny" of the pistol. After the shooting and robberies, appellant and his cohorts ran from the scene and hid their guns all together in someone's yard before leaving in Rice's car. Thus, the facts are similar to *Logan v. United States,* 489 A.2d 485 (D.C.1985), where the court found constructive possession in someone, although the weapon was actually held by another, because they acted together in disposing of it. *Id.* at 491. Also significant here, appellant later took part in a decision to send someone to retrieve the hidden weapons. All of this evidence is sufficient to support the inference that appellant had the ability to exercise control over the murder weapon and to guide its destiny. *See Bernard, supra,* 575 A.2d at 1195–96; *Curry, supra,* 520 A.2d at 263. To the extent that relinquishment of the weapon by one in actu-

---

* *Judge* WAGNER *was an Associate Judge* of this court at the time of argument. Her status changed to *Chief Judge* on June 14, 1994.

1. The government concedes that this conviction cannot stand on an aiding and abetting theory because it failed to prove that the person in actual possession of the pistol was not licensed to carry it. *See Jefferson v. United States,* 558 A.2d 298, 303–04 (D.C.1989), *cert. denied,* 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990).

al control may be necessary to establish constructive possession in another, *see Jefferson, supra,* 558 A.2d at 304, such relinquishment occurred here, albeit in the asportation and concealment phases of the criminal venture.

## II.

█ Appellant argues that his other convictions should be reversed and a retrial ordered because the judge erred in her instructions to the jury on the credibility of witnesses. Appellant makes three claims in this regard: (1) that the judge impermissibly implied that appellant perjured himself *at trial;* (2) that the judge impermissibly singled out the defendant; and (3) that a portion of the judge's instruction constituted a prohibited *"falsus in uno"* instruction. We find no merit in the first two claims of error. And, with regard to the third, we conclude that even if the particular language employed by the trial court was error, it was harmless. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *White v. United States,* 613 A.2d 869, 874 (D.C.1992) (en banc).

Appellant contends that the trial court, in a part of its instruction to the jury on credibility, conveyed its belief that some of appellant's testimony *at trial* had been perjurious. The record reflects that appellant testified at the trial that during the robbery and murder he had been elsewhere with others. He also testified, however, that *prior to trial* he lied repeatedly in his statements to the police and in his sworn testimony before the grand jury. (He confessed to the grand jurors in some detail the planning and execution of the robbery.) When counsel and the trial court discussed the court's final charge to the jury, the prosecutor urged the court to include in its instruction on credibility the so-called perjurer's testimony instruction.[2] The defense attorney objected and the court omitted this instruction from its charge.

Subsequently, this time over defense counsel's objection, the court included in its charge on credibility a special instruction it

had prepared. Thus, the court in its standard instructions on credibility first directed the jury, "You alone determine the weight, the effect and the value of the evidence as well as the credibility, that is the believability of witnesses, who have come before you." The court further instructed the jurors, "You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed." The court thereafter instructed the jury:

> In the final analysis, you should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.... With respect to judging credibility, let me give you this instruction. *A person who lies when he or she was sworn to tell the truth commits perjury. I must warn you that the testimony of a witness who has lied under oath should be viewed cautiously and weighed with great care. It is, however, for you to decide how much of that testimony, if any, you wish to believe.*

Appellant seizes upon the three sentences highlighted above, which were contained in the court's instructions on credibility that consumed 16 pages of transcript. Appellant argues that the first two sentences of that text conveyed to the jurors the judge's belief that appellant had lied to them *at the trial* and consequently they should view his testimony *in the courtroom* as perjurious. As a consequence, appellant contends he was denied a fair trial because the court improperly injected its opinion of the credibility of appellant's testimony in his own defense in its final charge to the jury.

We are not so persuaded. Given the express admission by appellant in his testimony to the jury that *prior to trial* he had lied under oath to the grand jury, we deem the trial court's specially prepared instruction, when read in context, as nothing more than a reference to appellant's self-confessed *pretrial* perjury. In our view, the trial court's

---

**2.** This standard instruction reads: "The testimony of an admitted or convicted perjurer should be received with caution and scrutinized with care." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.25 (4th ed. 1993); *see* 1 E. Devitt, *et al.,* FEDERAL JURY PRACTICE AND INSTRUCTIONS § 15.10, at 525–27 (4th ed. 1992).

instruction "stated no more than what should be obvious to common sense," *Clifford v. United States,* 532 A.2d 628, 640 (D.C.1987); *viz.,* that a person who admits lying under oath to the grand jury, as appellant explained to the jurors he had, has committed perjury.[3] Thus, no error was committed.

■ Appellant also urges, citing *Clifford, supra,* that the instruction the court gave "singles out the defendant's interest in the outcome of a trial." However, the disputed instruction nowhere employed the term "defendant," but rather used the term "person." Interestingly, several government witnesses admitted in their testimony at trial that they lied in their pretrial statements and grand jury testimony. Thus, it cannot be concluded that the court in its special instruction erroneously singled out appellant or his special interest, thereby running afoul of the general rule against this practice. *Clifford, supra,* 532 A.2d at 640.

■ Finally, appellant asserts that the court's instruction "was really a *'falsus in uno'* instruction" which this court disapproved in *Kinard v. United States,* 416 A.2d 1232, 1235 (D.C.1980).[4] Clearly, the trial court's instruction was not equivalent to the standard *falsus in uno* instruction at issue in *Kinard.* The court's self-styled instruction informed the jury as to how to evaluate the testimony of any "person" who admits during trial to the jurors that he lied under oath to the grand jury and thus committed perjury.

The trial court had already given the jurors the standard instruction which allowed them to accept in part and reject in part the testimony of any witness. Even if we were to assume *arguendo* that the part of the court's instruction which departed from the exact language of the standard credibility instruction should not have occurred, we are satisfied that the jury's verdict was not "substantially swayed" by the trial court's choice of words.

The record reflects ample evidence of appellant's guilt. The prosecution's case against appellant consisted of the testimony of the two surviving victims and an additional eyewitness. Appellant made detailed written and oral confessions to the police and testified to the grand jury under oath that he participated fully in the planning and the conduct of the armed robbery. His testimony in his own defense at trial was impeached with the statements he had made to the court prior to trial in which he admitted his guilt as a part of a plea agreement from which he later withdrew. In our view, the evidence of guilt in the record was "gargantuan" and the asserted error was "minuscule." *See Clark v. United States,* 593 A.2d 186, 192 n. 8 (D.C.1991) (quoting *Chapman v. United States,* 547 F.2d 1240, 1250 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977)).

Accordingly, we affirm the convictions.[5]

*So ordered.*

---

**3.** Appellant complains that the trial court, without inquiry or explanation to the jury, accepted as true appellant's testimony to the jury that he had lied to the police and to the grand jury under oath before the trial commenced. However, had the court interjected itself into the trial at this point and taken from the jury the determination of the truthfulness *vel non* of appellant's testimony, then the court would have improperly arrogated to itself the function of the jury as well as "singled out" the defendant in a manner condemned in *Clifford.*

**4.** The standard *falsus in uno* instruction (which, in light of *Kinard, supra,* has been omitted from CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (4th ed. 1993)) reads:

If you believe that any witness has willfully testified falsely with respect to any material fact about which the witness could not reason-

ably be mistaken, then you may, if you deem it fit to do so, disregard all or any part of the testimony of that witness, or you may accept such portion of his testimony as you find worthy of belief.

*See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.12 (3d ed. 1978).

**5.** Since the standard perjurer's instruction was not given in this case our affirmance cannot be taken as an approval of its use with reference to a defendant's testimony. We conclude only that under the particular circumstances presented here the court's special instruction in the instant case did not constitute reversible error. In future cases, the trial court should proceed quite cautiously in crafting special instructions for jurors concerning the credibility of defendants testifying in their own defense lest the general efficiency of the standard credibility instructions is thereby undermined.

KERN, Senior Judge, concurring in part, dissenting in part:

I concur in the reasoning and result reached in Part II of the opinion. However, I am unable to agree that the evidence presented at trial with regard to the CPWOL charge was sufficient to establish appellant's constructive possession of the murder weapon. My colleagues cite *Logan v. United States,* 489 A.2d 485 (D.C.1985), to support their conclusion that the manner in which the weapons were disposed of in this case supports a finding of constructive possession, apparently concluding that because appellant's cohort hid his pistol in the same place that appellant hid his shotgun, the cohort manifested his willingness to "actually relinquish" the pistol to appellant. *See Jefferson v. United States,* 558 A.2d 298, 304 (D.C. 1989). Evidence that two cohorts each placed his weapon in a common hiding place does not, in my view, establish their willingness to actually relinquish the weapons to each other.[6]

I do not find the evidence presented regarding appellant's actions during the robbery itself sufficient to establish that appellant had the right to exercise dominion over or guide the destiny of the pistol carried by his cohort. *See Jefferson, supra,* 558 A.2d at 304. Rather, the evidence showed that appellant was preoccupied with robbing one victim while at the same time the assailant carrying the pistol confronted and attempted to rob another victim whom he ultimately shot and killed. There was no evidence of any verbal communication on the scene between appellant and the assailant armed with the pistol. Apparently, appellant had his back turned to the assailant at the critical time of the shooting.

I find the facts of the instant case more analogous to *Jackson v. United States,* 395 A.2d 99 (1978), a case in which we overturned a CPWOL conviction premised on a constructive possession theory. The evidence in *Jackson* showed that two persons accomplished a robbery in which only one of them carried a gun. Even though the two robbers were clearly functioning as a team and entered the same getaway car with the gun, the court found that there was insufficient evidence to conclude that the robber who did not carry the gun nevertheless had constructive possession of it.

A motion for judgment of acquittal "must be granted if the evidence, when viewed in the light most favorable to the government, is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime." *Curry v. United States,* 520 A.2d 255, 263 (D.C. 1987). On the facts presented here, I do not believe a reasonable juror could conclude beyond a reasonable doubt that appellant had the ability to "guide the destiny" of the pistol his cohort carried. *See Jefferson, supra,* 558 A.2d at 304. Therefore, I would find that the trial judge erred in denying appellant's motion for judgment of acquittal on the CPWOL charge.

---

**6.** Further, I note that although appellant and his cohorts sent someone to retrieve their weapons from the hiding place they were ultimately unsuccessful in exercising control over the destiny of their weapons. The person appointed to retrieve them did not comply with their request instead apparently exchanging the weapons for drugs on the street.